Good morning and may it please the court, Vanessa Carroll on behalf of the petitioner Helen Charles Crawford. This appeal arises from a criminal case where the defense was left to attempt an insanity defense without any expert assistance because the trial court ruled that Mr. Crawford would first have to prove insanity to the court before he would receive access to any expert assistance. What record support? So the statement you just made, the trial court said he would have to prove he was insane in order to get expert help, what, I mean that sounds pretty bad. What record support do you have for that specific contention you just made? Yes, sir. I believe it's first apparent at the April 1992 hearing, which is where Mr. Crawford first submits his AIC motion and makes a request for expert assistance, and at that point the trial judge says, no, I'm not going to grant your motion, and instead the judge wants his own evaluation, and when you look at that transcript, the type of evaluation that the judge ordered was a sanity evaluation. He wanted the local mental health center to tell him whether or not Mr. Crawford was insane. Well, I understand that, but where does the judge say, you're not going to get an expert unless you prove to me you're insane? He begins to use that specific language at the next pretrial hearing in September, where they realize that that first mental health evaluation was inadequate, and the state again renews its motion for Mr. Crawford to have an evaluation. Trial counsel again is pushing, no, your honor, I should get my own evaluation to aid with the defense, and the judge keeps saying, we're not to that point yet, and then the judge actually does say, I need some proof of insanity, and asks the defense, can you put on some proof of insanity, which trial counsel can't do at that point, so I believe it's at that point that the trial judge is setting up the standard that he wants proof of insanity before he's going to grant the defense motion. Okay. Okay. Well, I can look at those parts of the record. I thought that where all this was going was the court finally says, look, we're just not to the point yet where I'm going to rule on your AIC motion, and there never is actually a ruling on the motion. I believe there is a ruling on it, because trial counsel at that first hearing in April, he submits the request, he makes a very solid record about what he's looking for, that he wants an expert appointed to aid the defense in preparing an insanity defense, and the judge doesn't grant the motion. Okay. Well, he doesn't grant the motion at that time, but where in the record does it show that the judge denies the motion to appoint an expert under AIC? I believe it shows that in that record and at the subsequent hearing in September. Can you give me a record page where the judge denies the motion? Yes, Your Honor. At the September hearing, on pages 2096 to 97 of the record, the judge says, I haven't any proof, I haven't heard anything that would indicate to me that the man has a problem. If there is proof you want to put on regarding insanity, I have indicated that I would order this examination based on the facts and apparently the state doesn't seem to oppose him being examined. Okay. Is that where you say that he denied the motion? Yes, Your Honor. Okay. Thank you. At the same time that the court denied Mr. Crawford's motion, the court also granted the state's request to have Mr. Crawford undergo a psychiatric evaluation due to his decision to raise an insanity defense. As a result, the state had the benefit of two experts at trial, while Mr. Crawford did not have even one. The trial court's ruling was contrary to the Supreme Court's decision in AIC v. Oklahoma, which held that it's clearly established that an indigent defendant who demonstrates that insanity at the time of the crime is going to be a significant factor at trial is entitled to a competent expert who is, quote, sufficiently available to the defense and independent from the prosecution to aid in the evaluation, preparation, and presentation of the defense. Mr. Crawford did not receive this assistance. He did not receive all that he was entitled to under AIC. And given the importance of expert assistance in this case, the trial court's error had a substantial and injurious effect on the verdict. I'll first address the argument that Mr. Crawford satisfied his burden to obtain expert assistance under AIC. AIC says that the defendant must make a preliminary showing that his sanity at the time of the crime is likely to be a significant factor at trial. While AIC does not specifically define what that preliminary showing is, the facts of the AIC, I believe, are instructive for what the defendant should be able to produce. The court in AIC took note that the defendant there had noticed his intent to proceed with an insanity defense. The court also noted that under state law, Mr. AIC had the burden to produce evidence of insanity at the trial. The court also noticed that Mr. AIC had been diagnosed with psychiatric disorders. In this circuit, the court has held that AIC requires a defendant, at a minimum, make allegations supported by a factual showing that the defendant's sanity is, in fact, at issue in the case. The circuit has also taken note that if the state is going to introduce experts, then that also triggers a defendant's right to have an expert appointed on his behalf. Mr. Crawford more than satisfied that requirement here. The trial court agreed that he was undoubtedly indigent. He served both the court and the state with early notice that he intended to proceed with an insanity defense. State law also required that he produce evidence of insanity at trial. Trial counsel provided the court with evidence that Mr. Crawford suffered from bipolar disorder, that he took lithium to treat his psychiatric disorder, that Mr. Crawford had two prior psychiatric hospitalizations, a history of suicide attempts, and I believe most importantly, trial counsel provided the court with a sworn affidavit from a psychologist who had done a preliminary review of Mr. Crawford's records, and he stated to the court under oath that there is evidence of certain disorders that could provide the basis for a defense of not guilty by reason of insanity, and also of importance that weighed in favor of Mr. Crawford making that threshold showing is that the state was given access to expert assistance. I believe I've already covered the issue of when the denial occurred, just to restate that again quickly, I believe it was denied at the April 1992 hearing and then again at the September 1992 hearing. I also want to address that although Mr. Crawford did receive evaluations at the state hospital, these evaluations were insufficient to provide Mr. Crawford with what he was entitled to under AIC. AIC is very clear that a simple examination is not enough to fulfill what a defendant is entitled to. AIC certainly does say that the defendant should receive a professional examination on issues relevant to the defense, but also experts are expected to do several other things under AIC. One, they are supposed to help the defense determine whether or not the insanity defense is viable. They are supposed to assist in preparing the cross-examination of the state's psychiatric witnesses by advising on the probative questions to ask the opposing party's psychiatrists and how to interpret their answers. Also translate a medical diagnosis into language that will assist the trier of fact and therefore offer evidence in a forum meaning to the task at hand. And the psychiatrist for each party is supposed to enable the jury to make its most accurate determination of the truth on the issues before them. The more recent case of McWilliams v. Dunn illustrates that AIC definitely requires more than just an examination. In the McWilliams case, the defendant there was evaluated by a three-person lunacy commission as well as a neuropsychologist. However, when that case reached the U.S. Supreme Court, the court asked, what about the other three parts of AIC v. Oklahoma? The court then looked at the things that Mr. McWilliams did not receive and noted that the neuropsychologist never helped the defense evaluate his report, medical records, or translate any of that information into legal strategy. The court also noted that neither Dr. Goff or any expert helped the defense prepare or present arguments that might have explained why the state hospital claimed that Mr. McWilliams was malingering and not necessarily suffering from mental illness. The court also noted that the expert that did conduct an evaluation of Mr. McWilliams did not help the defense prepare a direct or cross-examination of witnesses or testify at the judicial sentencing hearing. The court also noted that Dr. Goff did not help the defense in evaluating, preparing, or presenting the case. All the experts there did was conduct an evaluation. So let me just ask you this. With respect to the AIC claim, the standalone AIC claim, do you agree that this is an AEDPA case? Yes, Your Honor. Okay. So we have to defer to the last, you know, last recent decision of the state courts with respect to that, which found the claim defaulted, right? Yes, Your Honor. Okay. So what is, what do you have to convince us of to overcome that AEDPA bar? So I believe Mr. Crawford has demonstrated both cause and prejudice to overcome the default of that claim through the ineffective assistance of appellate counsel. So I believe that the— Well, yeah, but don't we have to define that whatever the relevant Mississippi state court decision is unreasonable? Didn't they reject the idea that, I mean, I'm just, I'm trying to get at what are we deferring to? Yes, Your Honor. So the way I understand it is that a procedural default ruling is not a ruling on the merits, and so the court looks at that de novo. But— Have we ever said that? I'm sorry? Have we ever said that? I believe the U.S. Supreme Court has said that. As I understand it, there's a circuit split on the question of what is the standard of review that we apply to cause and prejudice, in particular where the predicate for the cause and prejudice here would be a constitutional claim, namely ineffective assistance of appellate counsel. So I'm curious. As far as I know, our court has not taken a position on it. As far as I know, the Supreme Court has never said what standard applies on the cause and prejudice inquiry. But I'd be happy to correct, be corrected.   said what standard applies on the cause and prejudice inquiry. I believe that because the cause and prejudice, to excuse the procedural default, is ineffective assistance of appellate counsel, and the Mississippi Supreme Court did adjudicate that on the merits when they said that Mr. Crawford did not meet the Strickland standard. So I believe that you would defer—there's a procedural default ruling, but then there is an adjudication on the merits of the underlying claim that gives rise to that procedural default. And so you would defer to the Mississippi Supreme Court's decision that he did not  You're saying the cause would be the appellate counsel didn't raise the AIC claim? Is that the cause? Yes, Your Honor. And so what did the Mississippi Supreme Court say about the appellate counsel and his failure to raise the AIC claim on direct appeal? Assume you can raise that on direct appeal. Yes. All the state court decision said was that on the Strickland claims, and this was one of them, that Mr. Crawford did not show deficient performance or prejudice.        No, no. No, no. No, no. No, no. No, no. No, no. No, no. No, no. They didn't say that he had deficient performance as to the appellate counsel not raising the AIC claim. What did they say about that? They didn't say anything beyond that. That was all they said. They didn't say that the trial court didn't even rule on an AIC claim? No, Your Honor. No. Okay. It was a, not a, it was basically a summary decision, but it wasn't adjudicated? Maybe I'm misremembering. Did the district court here say, well, the trial court didn't even rule on an AIC claim? That was what the district court said. Yes. That was the grounds in the district court. So why is that, why is that wrong? I mean, that's why I was asking you earlier, where's the ruling? I don't believe that's supported by the record because, again . . . And that's why I asked you at the beginning, what's the record citation for where the trial court denied the AIC claim? And you gave me a page number and I pulled it up. And at the end of 2097, the, Mr. Fortier, who I guess was representing the defendant, said, then when we receive that report, I still have the right to come back and argue that he has a right to a psychiatrist for his defense, and the court says that's right. And that's, that's why I was trying to remember that, and so you pointed me to that page. That's why I thought that there hadn't even been a ruling on the AIC motion. The court is saying, you can come back later and make this, make this motion. I believe the record does show that the court did rule on that because I believe defense counsel discharged his obligation to make a record to assert Mr. Crawford's right to expert assistance, first at the April hearing, and the . . . Well, I mean, after, after that exchange in 2097 of the record, did the, Mr. Fortier come back and say, okay, now it's, now I'm making my AIC motion, so here I am, now it's time to make it? I believe the record is showing that he already did that and that he didn't, had no obligation to come back. It's always possible for a defense attorney to re-urge a motion to request reconsideration after it's been denied, but I do believe it was very clear at the April hearing and even more so at the September hearing that the judge was applying a standard that was contrary to AIC that required proof of insanity. I believe Mr. Fortier met his burden to make that threshold showing what was required under AIC. He presented factual evidence.  Mr. Fortier said, well, look, there couldn't have been deficient performance by the appellate counsel because the trial counsel didn't even make an AIC motion, and so therefore, the trial court never denied it. So how could it be deficient performance not to then raise AIC on direct appeal? Well, I would respectfully disagree. I believe that the record is clear that trial counsel made an AIC motion on two occasions, in April and again in September, and the judge did not grant that motion, and it was properly preserved in the record. When it went up on direct appeal to the Mississippi Supreme Court, one of the justices even remarked and questioned appellate counsel why this issue had not been raised on direct appeal. And what was their response? It was an omission. Appellate counsel did submit an affidavit in post-conviction saying that he did intend to raise an AIC claim, but it was an omission on his part. Do you think that's enough in and of itself to establish prejudice? I mean, just because he said in an affidavit after the fact, yeah, I forgot to raise it, does that mean it would have been meritorious? Don't you have to show that for it to be prejudicial? May I answer? Certainly. I believe Mr. Crawford can certainly establish prejudice because there is, as it states in the brief, if that issue had been raised on direct appeal, I believe the Mississippi Supreme Court would have reversed under their jurisprudence, especially because the state had the benefit of two experts at trial. Mr. Crawford did not have any, and so I do believe he would have prevailed on direct appeal.  Thank you, Your Honors. You've saved time for a vote. Ms. Carroll? Yes, Your Honor. Five minutes. May it please the Court, Bridget Grant, on behalf of the Attorney General of the State of Mississippi, and I represent the respondents in this appeal. This court should affirm because the district court properly denied federal habeas relief in a detailed opinion that was well-reasoned, legally sound, and resolved the issues in a manner fundamentally consistent with AEDPA, and this court can easily resolve the three issues properly before it for three reasons. First, the district court correctly held that Petitioner's challenge to the expert funds issue is procedurally barred, and that his claim of ineffective assistance of appellate counsel fails to establish cause and prejudice to overstep the bar to a merits review. Second, the district court properly rejected Petitioner's claim of ineffective assistance of appellate counsel applying the doubly deferential standard of review required under Strickland and AEDPA. And third, the district court properly rejected Petitioner's claims of ineffective assistance of trial counsel under the same doubly deferential standard of review. On my first point, the district court correctly held that Petitioner's claim of trial court error on the request for funds to hire Dr. Hutt is procedurally barred, and the district court also properly rejected Petitioner's claim of ineffective assistance of appellate counsel as cause to overstep the procedural bar to a merits review of the alleged trial court error. So, cause for the default can ordinarily be established by showing that some external impediment prevented the petitioner from presenting his claim, and a meritorious claim of ineffective assistance of counsel can be cause. That ineffective assistance of counsel claim itself must be preserved, and here, Petitioner did that. He did raise an independent claim, his argument was that appellate counsel was constitutionally ineffective for failing to raise the alleged trial court error on direct appeal. And the Mississippi Supreme Court rejected that independent claim of ineffective assistance of appellate counsel for failure to meet the Strickland elements and as meritless. And this- That's the Mississippi Supreme Court's ruling on direct appeal? On post-conviction review, Your Honor. He, Petitioner, raised this issue for the first time on state post-conviction collateral review. So, what did it say about this particular issue? The court said that, on the ineffective issue, Your Honor, the court said that the court finds that the claims of ineffective assistance of counsel fail to meet the Strickland versus Washington standard, and the court finds that all claims are without merit. It didn't, it just, did it not give reasons? It did not. But- I know that's not determinative for ed-pub purposes, but it just didn't give reasons. Yes, Your Honor. Even, even a denial such as that does not diminish the deference that's required under EDPA. So, your position is we would have to defer. With respect to the cause and prejudice part of this, do we defer to that decision under EDPA? So, for that freestanding claim of ineffective assistance of appellate counsel, yes, because the Mississippi Supreme Court denied that claim. And so, here, this court instructs that a petitioner can show cause by proving ineffective assistance of counsel, and that would be in satisfaction of the two-part test from Strickland, which is counsel's performance was objectively deficient, and that the deficient performance prejudiced the case. Here, the district court correctly determined that the basis of petitioner's claim of ineffective assistance of appellate counsel cannot be deficient conduct, nor could it prejudice the defense, because the record is clear. The trial court never denied the motion. So, in analyzing petitioner's claim of ineffective assistance of appellate counsel, the district court got it exactly right. And that brings me to my second point here, and that's that the district court properly rejected petitioner's claim of ineffective assistance of appellate counsel, properly applying the doubly deferential standard of review under Strickland and EDPA. And so, the district court correctly observed that the pivotal question is whether the state court's application of the Strickland standard was unreasonable. And this standard is different from asking whether defense counsel's performance fell below the Strickland standard. Because under Mitchell, when section 2254D applies as it does here, the question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. And a state court's determination that a claim is meritless precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision. So here, the district court first considered petitioner's support for his claim, which was appellate counsel's affidavit at 3165 of the record stating that the failure to assert the denial of the ape claim on direct appeal was not strategic but inadvertent. But as the district court properly observed, petitioner then, quote, leaps from this concession of error to the conclusion that but for it, the case would have been reversed. But the district court correctly concluded that in this instance, there certainly is a reasonable argument that appellate counsel satisfied Strickland's deferential standard because here, the trial court never denied the motion. And that certainly provides sufficient rationale. If the trial court never denied the motion, then failure to raise that issue on direct appeal couldn't be deficient performance nor could it prejudice the defense because that would have been a meritless claim. Um, and Judge Oldham, I know that you brought up the point of the circuit split on the analysis of ineffective assistance of counsel in the cause and prejudice context. Um, and I mean, I agree that there is a circuit split on that point. Um, I would submit that under the same logic of the principle of exhaustion, which is a prerequisite to federal habeas relief, that analysis of the cause and prejudice issue would be properly subject to AEDPA deference. And that's because exhaustion of the independent claim of ineffective assistance of counsel is required for the claim to serve as the basis for cause. Um, there's- Can I ask you a factual question? Yes, Your Honor. Did Mr. Crawford have the same appellate lawyer on direct, the same lawyer on direct appeal that served as trial counsel? He did not, Your Honor. So it was a different- Appellate counsel. Yes, Your Honor. And that new appellate counsel got a 5-4 decision from the Mississippi Supreme Court on direct appeal? I believe that's what it was. So it came pretty close to prevailing on the direct appeal. He raised 10 issues that he deemed were meritorious and litigated those on direct appeal. The Mississippi Supreme Court held that all of the claims were meritless and that four And so they did, you know, thoroughly discuss those issues. And divided 5-4 on at least one of them? Yes, Your Honor. So the constitutional standard for ineffective assistance of counsel is a counsel that's so deficient as to be no counsel at all. And I'm curious if the state of Mississippi is aware of a case where we could hold that a lawyer was so ineffective as to be no lawyer at all that was able to somehow secure a 5-4 decision, admittedly against him, but relatively close on direct appeal? I would submit that on the record in this case, I mean, counsel secured Crawford this unprecedented 20-year out-of-time appeal. And on this record, counsel certainly, he had the ability to choose which issues he deemed meritorious. He did litigate those and received that decision. And so on this record, there's no basis to find that counsel performed ineffectively. And I think, you know, whether this court did look at the cause and prejudice analysis under ed pediferance or it gave it a de novo review, in this purpose, for this purpose, the standard of review makes no difference because petitioner did not receive ineffective assistance of counsel. To satisfy the Strickland prong, he must show that there's a reasonable probability that but for counsel's unprofessional errors, that the result of the proceeding would have been different. And on this record, the outcome would not have been different. Because again, if appellate counsel had tried to challenge the expert funds issue on direct appeal, the state appellate court could have denied the claim as meritless because the trial court never denied the motion. I have another question about how we're supposed to do EDPA now. The Supreme Court, as I'm sure your office is and you are well aware, the Supreme Court has had two landmark EDPA decisions this very term, both in the last six months, Brown v. Davenport and the Shin case. And in both of those cases, the Supreme Court has told us that even when all of the strictures of EDPA are met, even when all of the claims are valid, even when the petitioner is otherwise entitled to relief, that the authorization to federal courts, our court, to grant habeas relief to state prisoners being held pursuant to a judgment of a state court remains discretionary. They cite the text of 2241, the text of 2243, and they say, even at the end of the day, you still have to convince a federal court, even when the claims are valid, that law and justice require the granting of the writ. And I'm curious if your office has a view about how we are supposed to do this inquiry now. Is this like a two-step thing where we do EDPA and all of the EDPA stuff that we normally do in EDPA cases, and then at the end, we have to say, even assuming that we're wrong about all of that, law and justice wouldn't require granting the writ, or do we start with law and justice and then do EDPA? Does your office have a view? I mean, I think that certainly EDPA applies, and on federal habeas review, deference is the rule. I am aware of the Brown v. Davenport case that was decided in 2020 after briefing closed, and it did hold that for a court to grant federal habeas relief, it must apply both the harmless error and EDPA. And I think that here, looking at this case under EDPA, which requires that if there's any reasonable basis for the . . . if there's any reasonable argument, especially here that counsel satisfied Strickland's deferential standard, then petitioner fails on his claims. If I may, just briefly touch on some of the points that Your Honor, Judge Duncan made, and I would like to just briefly touch on the procedural history of the AIC motion, because I think the record clearly shows that while the trial court did not immediately grant the motion, it never denied it. And so first we have the April 1992 hearing on the AIC motion, and at 2069 of the record, the trial court said, I'm in substance continuing the case without prejudice to further motions from either side for examination or for funds, but the trial court wanted to review a preliminary report before deciding the motion for funds, because at that point, he only had the affidavit of Dr. Hutt in front of him that provided the bipolar diagnosis, the substance abuse problems, and the judge said, you know, although the statement doesn't say it in black and white to me, it alludes to the fact that perhaps there could be some illness which possibly could affect his ability to understand the wrongfulness of his act, but he wanted to see a preliminary report and some sort of factual proof as to that before ruling on the motion. So then at the September 1992 hearing, the next hearing, the court, there was not a ruling there either. The court said that at 2096 through 97 of the record, we aren't to the point of deciding the motion, and the district court correctly concluded that that's an unsurprising response given the relatively benign bipolar analysis listed by Dr. Hutt in his affidavit. And so 4TA, original trial counsel, argued under AIC. The trial court didn't disagree with that, but he explained again that the only thing before the court was the petitioner's motion and that the court hasn't heard any proof. There has to be some sort of factual showing there, and there was nothing to indicate that petitioner has a problem. 4TA again at 2097 referenced Dr. Hutt's affidavit as the proof for that before the court, and the trial court responded, you'll confer. If you want to pursue this thing on insanity, I'll give you an order, but I'm going to have him examined at the state hospital. And at 2097, the trial court did not then deny the motion either. 4TA said, when I receive the report, I still have the right to come back and argue that Crawford has a right to a psychiatrist for his defense, and the court said, that's right. And I think the district court agreed with your point, Your Honor, Judge Duncan, that the trial court didn't deny the motion either. After that hearing, 4TA never came back and renewed the motion. The next hearing was in October of 1992, and at 2101 of the record there, 4TA had not even determined whether he would use an expert in Crawford's defense. He said that Dr. Hutt had examined petitioner once. He expected to examine him once or twice more prior to issuing his report, and when a defendant hires an expert at his own expense for evaluation, he's not required to provide the info to the state except under discovery if he's going to use them. So at that point, he hadn't even decided that. And then we come to the March pretrial hearing, and that's at 1405 through 06 of the record, and that's where the trial court called the AIC motion. At that point, 4TA had withdrawn a panel-represented petitioner at that time. At 1392 of the record, panel advised the trial court that that motion was moot as to the aggravated assault case, but he told the court that it's still the defense's intention to use the insanity defense in the aggravated assault case, but I've had some time to look at the other evidence, and I'm becoming more and more convinced that I may try that case strictly on its merits and not interpose or withdraw the insanity defense. And the trial court questioned panel on his proposed change in strategy here, and panel explained his strategic reason. He said the basic reason for the inconsistency is different lawyer, different defense. And speaking with Mr. 4TA, he considered taking the same line at some point, but for whatever reason he chose to consolidate, but I don't believe that that's in the client's best interest. So at 1407 through 08 of the record, the trial court said, let's be clear. So you withdraw all, if I'm hearing you correctly, you're going to withdraw all your motions that are inconsistent with the position you're now taking, and panel responded, yes, sir. So again, both the record and even panel's affidavit provided by petitioner on post-conviction review indicate that the trial court never denied the motion for funds. The motion for funds was never renewed, and trial counsel ultimately made the tactical decision not to renew the 8 motion and actually withdrew it, and that's shown in the record at 1407 through 08. So again, counsel's failure to raise a meritless argument cannot form the basis of a successful and effective assistance of counsel claim because the results of the proceeding would not have been different had counsel raised the issue. There is the fundamental miscarriage of justice exception. Petitioner did not argue that in the district court, he failed to provide any evidence that would show as a factual matter that he did not commit the crime of conviction. He didn't make that argument at all in the district court and doesn't on appeal, so he has not shown a fundamental miscarriage of justice to overstep the procedural bar to a merits review of the 8 claim. I would point out that, just briefly, what the trial court was doing here was he was trying to put on the proof that is required to meet that threshold showing of insanity under 8. There were four different opportunities, the first three pre-trial hearings that I just walked through and then that final one in March where, again, trial counsel made the tactical decision not to renew and withdrew that motion, and so the preliminary showing is that we have indigent defendant, the mental condition was relevant to the punishment he might suffer, and insanity at the time of the offense was seriously in question. And that showing on the third point is made by supplying particular facts demonstrating the necessity of a psychiatrist, not just by making general allegations of need. And this court holds in Williams that their assertions that the defendant was insane at the time of the offense, evidence of mental problems generally, or the existence of a defendant's addiction are insufficient to invoke 8. And this court analyzed its previous decisions in Volson and Volante, and in Volson this court rejected the argument that a defendant's sanity will always be a significant factor at trial when the defendant pleads insanity, and concluded, again, that 8 requires that minimum showing. So 8 does not require the appointment of a mental health expert whenever the defendant is contemplating an insanity defense, rather he must make that threshold showing that the appointment is reasonably necessary. I see that I'm running out of time. I would just like to do my third point, state for the court that the district court properly rejected Petitioner's claim of ineffective assistance of trial counsel under the same doubly deferential standard of review. Here the district court correctly concluded that however compelling Petitioner's new experts, who evaluated him over 20 years after the crimes in February of 2014, may have found evidence supporting a thesis that organic brain damage or epilepsy rendered him legally insane before August of 1993, the trial here. There is no evidence in the record to support the conclusion that a reasonably competent attorney would have recognized its supposed significance and launched a new investigation into the insanity defense in May 1993. And Yohe holds that counsel is not ineffective for failing to hire an expert if that's part of trial counsel's strategy. And here his strategy was to pursue the hybrid defense and it was in part successful. It helped Crawford avoid a life sentence on the rape that he was convicted of and he was acquitted on the kidnapping. So here the record demonstrates strategic choices by counsel that were at least in part successful and if we look at the contemporaneous record it shows that counsel certainly was effective. And I would just like to briefly conclude my time here today the same way that I began and that's with the standard of review on habeas. And here the district court respected and properly applied the deference afforded by AEDPA to its thorough analysis of Petitioner's claims. And I would just ask that this court affirm the district court's denial of federal habeas relief and dismiss this action with prejudice. Thank you. Thank you, Ms. Grant. Ms. Carroll for rebuttal. Thank you, Your Honors. Just a few final points and I know that we did address this at some length about whether or not the motion was denied, but I do want to bring the court's attention back to the what was going on at that pre-trial, at both of those pre-trial hearings. And at both of them it was defense counsel who initially raised the eighth motion, but then the state interposed their own motion for expert assistance. And it's those motions that the court granted. If you look at the lengthy order that the court issued in October, in the first paragraph it recites the underlying proceedings and says that when they convened in April, the After that one didn't work out as planned, the state renewed that motion in September and that's what the court was granting when it ordered the psychiatric evaluation. And I believe it's abundantly clear in that record that the court is doing that because it's employing a standard that is contrary to AIC. Mr. Fortier made a very clear record that he was looking for expert assistance to aid the defense. The state then came in and said, we want our own expert and invoked a local rule that would give the state access to an expert evaluation when the defense is going to raise an insanity defense. Are you being improper about that? I'm sorry, Your Honor? Are you being improper about the state saying we want our own expert? Not at all, Your Honor. I think that's fine so long as the defendant is also receiving their own expert assistance to aid in the evaluation of the defense. I think that's the real problem here and I think it also goes to the threshold showing that the court obviously saw fit that the state should have access to expert assistance but did not make that same determination for Mr. Crawford because it was using a standard that is contrary to AIC and that the court wanted proof of insanity before it would grant Mr. Crawford's request for expert assistance. I do want to touch lightly though on if the court does believe that it's not clear from the record that the trial court denied the motion and that the burden was on trial counsel or new trial counsel who replaced Mr. Fortier to renew that motion, then that was unquestionably ineffective assistance of counsel to not renew that motion when he knew that he was going into trial to raise an insanity defense and that the state would have the benefit of two experts. I understand what the state just represented to us, the subsequent counsel panel made a strategic decision to present what sounds like an unorthodox defense, a hybrid defense and as unorthodox as it was, it resulted in the defendant's acquittal on the kidnapping charge. Isn't that right? Yes, Your Honor. So how could it be ineffective? It was ineffective because he did raise a hybrid defense, but it was innocence with respect to kidnapping, but it was insanity with respect to the rape. He's a little shaky when he starts out at trial. His opening statement is very confusing and it's not clear where he's going, but by the time you get to the closing argument, it's very clear that he has put everything behind the insanity defense for the rape charge. He goes so far as to tell the jury that they would be dumb to acquit Mr. Crawford of rape because the record is so clear that he is mentally ill and that he needs to be committed indefinitely due to a psychiatric illness. So it's very clear from that record that trial counsel did not make a strategic decision to step away from the insanity defense. He embraced it. He made a full-throated insanity defense at trial, but he didn't do the one thing that the Supreme Court has told us is a virtual necessity if the insanity defense is to have any success at trial and he did not get expert assistance when he knew at the same time that the state would have two experts who would come in to rebut that defense and also say that Mr. Crawford did not even suffer from mental illness in the first place. Counsel, if we agree with every word in your brief and every word you've given us at argument today, what do we do with Shin and Brown v. Davenport? I don't believe that those made new holdings with respect to how federal courts are supposed to grant habeas writs. I am familiar with both of those decisions, and I did note that they were highlighting the history of habeas corpus and the language of the statute, but I don't believe either decision held that now federal courts reviewing habeas petitions should make this other calculation. So the dissents in both cases say that these are massive, humongous shifts in the way that habeas works, that this is the first time the court has ever, since AEDPA's enactment in 1996, said that the writ is discretionary and seized on the word may that appears in 2243. So at least four members of the Supreme Court disagree with the proposition that they didn't have these massive shifts in the way that we're supposed to do it, and I'm just curious how we're supposed to go about it in your view, given that five justices of the Supreme Court say that we must. I think absent a clear holding instructing the lower courts to go about habeas review in a different way. I believe we still follow 2254, we follow the court's precedents, and in closing I would ask that you grant Mr. Crawford's writ of habeas corpus. Thank you, Your Honor. All right. Thank you, Ms. Carroll. Next case, Spring Gorge to Education, Incorporated, versus McAllen, Indiana.